**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CR-26-320-D |
| | ) | |
| EDGAR REQUEJO-GARCIA, | ) | |
| | ) | |
| Defendant. | ) | |

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER**

Before the Court is Defendant's Motion to Suppress. [Doc. No. 18]. The government filed a response [Doc. No. 21], to which Defendant filed a reply [Doc. No. 24].

On October 6, 2026, the Court held a hearing on Defendant's motion at which Defendant appeared personally and through appointed counsel, Luciana Perez and Lea Glossip. [Doc. No. 27]. The government appeared through Assistant United States Attorney Brandon Hale and presented three witnesses, Officer Chris Villafáne, Officer Aldo Romero, and Officer Alan Quiroz. *Id.* The government introduced seven exhibits. *Id.* The parties presented their arguments, generally adopting the positions in their written briefs. *Id.* The Court took the motion under advisement. *Id*. Upon consideration of the evidence, case record, and the parties' arguments, the Court rules as follows.

**FINDINGS OF FACT**

In a one-count Indictment, Defendant was charged with reentry of a removed alien in violation of 8 U.S.C. § 1326(a). [Doc. No. 1]. Defendant moves to suppress his statements to law enforcement, physical evidence, fingerprints, biometric and identifying

information, evidence contained in his immigration file, and any other evidence obtained directly or indirectly from a traffic stop that occurred on July 7, 2026. Officers Villafáne, Romero, and Quiroz testified at the hearing concerning the events leading up to the encounter with Defendant and the circumstances surrounding Defendant's seizure by officers. The Court finds that the evidence received at the hearing establishes the following facts pertinent to the motion.

Supervisory Deportation and Detention Officer Villafáne has worked for Immigration and Customs Enforcement ("ICE") for approximately eleven years in the Street Fugitive Operations Team for Oklahoma City, Oklahoma. He also works with the Oklahoma City Enforcement Removal Operations ("ERO") team to locate, encounter, arrest, and remove individuals unlawfully present in the United States. He is the supervisor of Officer Romero and Officer Quiroz. Officer Romero has six years of experience as an ICE deportation officer. He has been working in conjunction with the ERO unit in Oklahoma City for approximately four years. Officer Quiroz has eight years of experience working as an ICE deportation officer. He has worked as a deportation officer in both west Texas and Oklahoma City. Each officer has extensive experience in locating, encountering, and arresting illegal aliens in Oklahoma City.

On July 7, 2026, the Oklahoma City Street Fugitive Operations Team conducted a targeted surveillance operation in the area of 700 SE 15th Street in Oklahoma City. The officers selected this location because their databases showed, and they knew from experience, that it is an area that has a high concentration of individuals who are unlawfully present in the United States. They also selected the area because they believed a designated

target would be there. Officer Romero was working as dispatch in the office on July 7, 2026, and Officer Quiroz was working in the field.

As part of the operation, officers conducted random license plate checks on vehicles traveling in the area to identify individuals unlawfully present in the country. At approximately 8:31 a.m. a Nissan Pathfinder bearing Oklahoma license plate JDD466 was randomly selected by Officer Cameron Hanks to have database checks conducted on it. At that time, Officer Quiroz texted Officer Romero the license plate number "Jdd466."

Upon receipt of the license plate number, Officer Romero ran a search using the database Accurint.[1] The database informed him that the vehicle was registered to Defendant. Using the information he obtained from Accurint, he ran a search using the database UPAX[2]. UPAX provided him with a photo of Defendant and informed him that Defendant had previously been voluntarily removed from the country twice, and involuntarily removed once. It also informed him that there was no record of Defendant receiving or applying for any immigration benefits, such as an application to be in the country lawfully, nor were there any records of him entering the country lawfully, such as a flight record or a record of his encounter with Border Patrol agents. Had Defendant reentered the country lawfully or been reencountered by Border Control agents, the

[1] Accurint is a database created by LexisNexis that aggregates an individual's various public information, such as an individual's license plate number and address, into a single searchable database for law enforcement.

[2] UPAX is a database operated by U.S. Customs and Border Protection. It provides law enforcement with an individual's biographical information, alien number, travel information, prior and pending removals, current immigration status, any immigration benefits the individual has applied to receive, and the individual's encounters with most law enforcement agencies.

database would have shown those records. Officer Romero testified that the combination of Defendant's prior involuntary removal and lack of lawful reentry or reencounter records indicated that Defendant was illegally present in the country in violation of 8 U.S.C. § 1326(a).

At approximately 8:33 a.m. Officer Romero gave Officer Quiroz's message that contained the license plate number a thumbs up response. Officer Romero testified that this meant that he believed the officers in the field had reasonable suspicion and probable cause to believe that the registered owner of the vehicle had committed a crime by being in the country illegally. He also responded by sending the photo of Defendant that he obtained from the database to assist the officers in confirming the driver's identity. At 8:34 a.m. officer Quiroz, responded "Title 42?", which he testified meant that he was asking Officer Romero whether the records indicated that Defendant had a prior voluntary removal. Officer Romero responded to the message stating that the records showed Defendant had two prior voluntary removals and one involuntary removal.

After receiving this information, Officer Quiroz confirmed that the driver of the vehicle matched the appearance of the individual in the photograph. The vehicle in which Officer Quiroz was a passenger attempted to conduct a traffic stop on Defendant's vehicle in coordination with Officer Hanks' vehicle. Both vehicles were unmarked, but were equipped with lights and sirens. Officer Quiroz testified that both law enforcement vehicles engaged their lights and sirens to initiate the stop. He further stated that Defendant acknowledged the officers' efforts to get him to stop with an obscene gesture (flipping them off), then he failed and refused to stop. Indeed, Officer Quiroz testified that Defendant did

not slow his vehicle or give any indication that he was going to pullover. Officer Hanks then maneuvered his vehicle in front of Defendant's vehicle with Officer Quiroz's vehicle blocking the rear. This maneuver resulted in Defendant's vehicle stopping.

A couple of responding officers then spoke with Defendant, at which point Officer Quiroz was handed a copy of Defendant's Mexico identification card. Officer Quiroz texted a photo of Defendant's identification card to Officer Romero, confirming that he was in custody and that he was the same individual depicted in the database results.

## CONCLUSIONS OF LAW

### I. Reasonable Suspicion.

The government bears the burden to prove the validity of a warrantless seizure. *See United States v. Neugin*, 958 F.3d 924, 930 (10th Cir. 2020). In this case, the government seeks to justify Defendant's seizure as an investigative detention permitted by *Terry v. Ohio*, 392 U.S. 1 (1968). "To be reasonable, a traffic stop must be justified at its inception and, in general, the officer's actions during the stop must be reasonably related in scope to the mission of the stop itself."[3] *United States v. Mayville*, 955 F.3d 825, 829 (10th Cir. 2020) (quotation and citation omitted). Under *Terry*, a stop is lawful at its inception if the officer has "articulable and reasonable suspicion that the person detained is engaged in criminal activity." *United States v. King*, 990 F.2d 1552, 1557 (10th Cir. 1993) (citing *United States v. Sokolow*, 490 U.S. 1, 7 (1989)).

[3] It is uncontested that the traffic stop was reasonably related in scope to the mission of the stop itself. Thus, for purposes of determining whether the officers had reasonable suspicion the Court only addresses the issue of whether the officers' traffic stop was reasonably justified at its inception.

Reasonable suspicion requires "a 'particularized and objective basis for suspecting' criminal conduct under a totality of the circumstances." *United States v. Pettit*, 785 F.3d 1374, 1379 (10th Cir. 2015) (quoting *United States v. Cortez*, 449 U.S. 411, 417-18 (1981)). This standard is "not ... onerous," *id.* at 1379 (quoting *United States v. Kitchell*, 653 F.3d 1206, 1219 (10th Cir. 2011)), with the level of suspicion required being "'considerably less than proof by a preponderance of the evidence or that required for probable cause.'" *United States v. McHugh*, 639 F.3d 1250, 1256 (10th Cir. 2011) (quoting *United States v. Lopez*, 518 F.3d 790, 799 (10th Cir. 2008)). Courts "'evaluate each factor alleged to support an inference of reasonable suspicion separately and in the aggregate.'" *United States v. Jackson*, --- F.4th ---, 2026 WL 2682995, at *5 (10th Cir. Sept. 14, 2026) (quoting *United States v. Gurule*, 935 F.3d 878, 885 (10th Cir. 2019)). Courts also "defer to the ability of a trained law enforcement officer to distinguish between innocent and suspicious actions." *United States v. McGregor*, 158 F.4th 1082, 1091 (10th Cir. 2025) (quotation and citation omitted).

Here, the government argues that the factors that support an inference of reasonable suspicion are: 1) that Defendant was present in an area known to have a high concentration of individuals unlawfully in the United States, 2) that their database checks informed the officers that the vehicle was registered to a foreign national, 3) that their database checks informed them that the owner of the vehicle had been voluntarily removed from the country twice and involuntarily removed once, 4) that their database checks informed them that Defendant did not have a record of lawful admission, adjustment of status, an approved application to remain in the United States, or a reentry encounter with Border Control

agents, and 5) that their database checks provided them with a photo of the owner of the vehicle which matched the driver's appearance.

Defendant argues that the officers did not have reasonable suspicion because the government's reliance on a search result that returned a lack of lawful reentry records is insufficient. Moreover, Defendant contends that the government needs more specific evidence of not only a prior involuntary removal from the United States, but that Defendant reentered the country illegally to demonstrate that the officers had reasonable suspicion to conduct the traffic stop.

Defendant's presence in an area known to have a high concentration of individuals who are unlawfully present in the country alone is insufficient to support reasonable suspicion. *See United States v. Briggs*, 720 F.3d 1281, 1286 (10th Cir. 2013) ("'[T]he fact that a stop occurred in a high-crime area cannot alone justify' an investigative detention." (quoting *McHugh*, 639 F.3d at 1257)). However, "the court [can] consider the location's high crime rate when combined with other factors." *Jackson*, --- F.4th ---, 2026 WL 2682995, at *5 (citing *United States v. Conner*, 699 F.3d 1225, 1231 (10th Cir. 2012); *United States v. DeJear*, 552 F.3d 1196, 1201 (10th Cir. 2009); *see also McHugh*, 639 F.3d at 1257 (considering the location's reputation and past calls regarding possible criminal activity)).

Based on the totality of the circumstances and the evidence presented, the government has shown that the officers had reasonable suspicion that Defendant was engaged in criminal activity when they initiated the traffic stop. Indeed, Officer Romero testified credibly that he conducted the database searches which informed him that

Defendant was the owner of the vehicle at issue, that Defendant had been voluntarily removed from the country twice and once involuntarily removed, that there were no records of Defendant's lawful reentry, and the system provided a photo of Defendant. Had Defendant reentered the country lawfully, UPAX would have shown records of his lawful reentry—such as records of his flight, records of his encounter with Border Control agents, or his applications for immigration benefits. Moreover, Officer Quiroz testified credibly that he relied upon the information Officer Romero provided him and he confirmed that Defendant matched the photograph he was provided before initiating the traffic stop. Their combined testimony is sufficient to support a finding that they had reasonable suspicion to conduct the traffic stop.

However, their reasonable suspicion is also bolstered by the fact that Defendant was present in an area that all three officers testified they knew from experience to have a high concentration of individuals unlawfully present in the United States. Furthermore, their databases showed the area had a high concentration of individuals in violation of removal orders. Accordingly, under the circumstances, it was reasonable for the officers to believe that Defendant was unlawfully present in the United States in violation of 8 U.S.C. § 1326(a) when they initiated the traffic stop. Thus, the government has demonstrated that it had reasonable suspicion.

**II. Probable Cause.**

A warrantless arrest of a person is reasonable under the Fourth Amendment if the arresting officer has probable cause to believe that the suspect committed a crime in the officer's presence. *D.C. v. Wesby*, 583 U.S. 48, 56-57 (2018). "The government has the

burden to establish probable cause in support of a warrantless arrest." *United States v. Carrazco-Escalante*, 300 F. Supp. 2d 1155, 1165 (D.N.M. 2004). "Probable cause to arrest exists where, under the totality of the circumstances, a reasonable person would believe that an offense has been committed by the person arrested." *United States v. Martin*, 613 F.3d 1295, 1302 (10th Cir. 2010) (quotation and citation omitted). This is an objective inquiry. *Apodaca v. City of Albuquerque*, 443 F.3d 1286, 1289 (10th Cir. 2006). "To determine whether an officer had probable cause for an arrest, we examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *Wesby*, 583 U.S. at 56-57 (quotation and citation omitted). "Because probable cause deals with probabilities and depends on the totality of the circumstances, ... it is a fluid concept that is not readily, or even usefully, reduced to a neat set of legal rules." *Id.* (quotation and citation omitted). "It 'requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.'" *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 243-44, n.13 (1983)). "Probable cause is not a high bar." *Id.* (quotation and citation omitted).

Here, all the evidence that supports a finding the officers had reasonable suspicion Defendant was violating 8 U.S.C. § 1326(a), is also sufficient to support a finding that the officers had probable cause. Additionally, Officer Quiroz credibly testified that Defendant refused to yield in response to the officers' traffic stop. Officer Quiroz credibly testified that both law enforcement vehicles' lights and sirens were engaged when they attempted to pullover Defendant's vehicle. However, rather than stop, Defendant acknowledged the officers by making an obscene hand gesture and attempting to elude them. Defendant's

vehicle only came to a stop when the officers maneuvered their vehicles directly in front of and behind Defendant's vehicle. Defendant's attempt to elude officers is a violation of Okla. Stat. tit. 21, § 540A(A).

Section 540A(A) provides in relevant part:

> A. Any operator of a motor vehicle who has received a visual and audible signal, a flashing red light, flashing red and blue lights, flashing blue and white lights, or any other combination of flashing red, blue, and white lights, and a siren from a peace officer driving a motor vehicle showing the same to be an official police, sheriff, highway patrol or state game ranger vehicle directing the operator to bring the vehicle to a stop and who willfully increases the speed or extinguishes the lights of the vehicle in an attempt to elude such peace officer, or willfully attempts in any other manner to elude the peace officer, or who does elude such peace officer, is guilty of a misdemeanor.

Okla. Stat. tit. 21, § 540A(A) (emphasis added).

Defendant's attempt to elude the officers also supports a finding that they had probable cause to arrest Defendant without a warrant. *See also United States v. Morgan*, 936 F.2d 1561, 1569 (10th Cir. 1991) (finding probable cause for a warrantless arrest when, after a justified *Terry* stop, the defendant ran from the officer, ignored the officer's command to get on the ground, and struggled with the officer). Accordingly, considering the totality of the circumstances and the evidence presented, the government has met its burden to establish that Defendant's warrantless arrest was constitutionally permissible.

**III. Miranda Rights.**

Defendant argues that his statement to the officers that he was in the United States illegally should be suppressed because he was not provided his *Miranda* rights prior to

answering the officers' question. The government has represented that they do "not seek to admit this statement." [Doc. No. 21, at p. 3 n. 1]. Accordingly, the Court finds that this issue is moot.

**ORDER**

**IT IS THEREFORE ORDERED** that Defendant's Motion to Suppress Evidence [Doc. No. 18] is **DENIED**.

**IT IS SO ORDERED** this 15th day of October, 2026.

TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE